RECEIVED
IN LAKE CHARLES, LA.

AUG - 9 2010

TONY R. MOORE, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| UNITED STATES OF AMERICA | : | DOCKET NO. 2:05CR 20061-001 |
|---|---|---|
| VS. | : | JUDGE MINALDI |
| JUSTIN PAUL STERLING | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Presently before the court is the defendant's §2255 Motion to Vacate, Set Aside, or Correct his sentence [doc. 126]. The Government filed an Answer [doc. 131]. The defendant filed a Supplemental pleading [doc. 133] and a Reply [doc. 136] to the Government's response. The Government filed a Supplemental Answer [doc. 138].

Facts[1]

On January 23, 2005, a large Caucasian man, later identified as Keith Mullins, approached the defendant at a Shell gas station in Westlake, Louisiana, and asked if the defendant had any crack to sell. Not wanting to conduct a drug transaction in view of the gas station surveillance cameras, the defendant instructed Mullins to follow him to another location. The defendant had with him a "cookie" of crack cocaine weighing about two ounces. He also had in his possession an RG Model 14 .22 caliber revolver, which he carried as protection from "jackers," the name applied to those who

---

[1] These are the facts presented in the Government's Opposition, which are supported by the record.

rob drug dealers (Tr. I/II, pp. 15-16).

When they arrived at the alternate location Mullins asked the defendant for $200 worth of crack and as the defendant was sitting behind the wheel of his car breaking off a quarter of the cookie Mullins attacked the defendant, punching him in the face. He grabbed the defendant's crack and the defendant pulled the revolver. The two men struggled and the defendant shot Mullins through the hand. Undeterred, Mullins pulled the defendant out of his truck and the two continued to struggle on the ground. During the struggle the defendant shot Mullins in the abdomen. The defendant dropped the gun when Mullins ordered him to and Mullins picked it up. Mullins' female companion handed Mullins an object which he then used to hit the defendant. Mullins then fled the scene with the defendant's crack and revolver. The defendant did not report the incident to the police, however, Mullins did report the incident omitting the fact that the encounter involved his attempt to steal the defendant's crack cocaine. Mullins turned over to West Lake Police the .22 caliber RG revolver he had taken from the defendant (Tr. I/II, p. 16).

Through witness statements officers connected the gun they had obtained from Mullins to the defendant and later that evening contacted the defendant and asked if he would give a statement regarding the incident. He agreed and signed a waiver of rights card (Tr. I/II, pp. 33-36). In his statement the defendant admitted that while he was attempting to sell Mullins some crack cocaine Mullins had robbed him, he had shot Mullins, and Mullins had taken his gun. The defendant also admitted he had obtained the revolver a few days before the incident from a crack addict named "Wild Bill." The defendant claimed that "Wild Bill," was from Sulphur, Louisiana, drove an old white camper/van with a brown stripe, and that "Wild Bill" stole guns from his father's store (Exhs. 33, 39).

2

On March 1, 2005, a deputy with the Calcasieu Parish Sheriff's Office was dispatched to an area of Mossville, Louisiana, known for drug trafficking (Tr. I/II, p. 65). The officer received a description of the clothing of a suspect, which included a grey jacket and blue jean shorts. When he spotted a man matching this description he called him to the patrol car (Tr. I/II, pp. 65-66). The man was later identified as the defendant. The defendant granted the deputy permission to pat him down at which time the deputy removed a Lorcin .38 caliber semi-automatic pistol from the defendant's pocket. The deputy found no narcotics on the defendant. Nevertheless, he arrested the defendant and took him to the Sulphur Police Substation. The jail refused to accept the defendant on a concealed firearms charge and the defendant was given a misdemeanor summons and released. A trace of the firearm revealed that the defendant was not its registered owner.

The registered owner of the RG revolver was contacted. He said that his home had been burglarized and that the gun was apparently stolen during that burglary. In light of this information, a warrant was issued for the defendant's arrest for possession of the stolen revolver (Tr. I/II, pp. 44-45).

On March 10, 2005, officers went to the location where they believed the defendant could be found for the purpose of executing an arrest warrant for possession of a stolen firearm (Tr. I/II, pp. 46-47, 52-53). Officers advised the woman who came to the door that they had an arrest warrant for Justin Paul Sterling and she pointed in the direction of a sofa where they could see a man was sleeping. One of the officers shook the man to wake him up and eventually rolled him over in an attempt to verify his identity. The defendant was handcuffed and arrested. As officers moved the defendant from the sofa they noticed a Bryco .38 caliber pistol upon which the defendant had been sleeping (Tr. I/II, pp. 57-59).

Closer inspection of the pistol revealed that its serial number had been scratched off. However, a forensic expert was subsequently able to restore the serial number. During the arrest the defendant falsely told the officers that he was not Justin Paul Sterling but was, instead, Joseph Braxton, his brother to whom he bore a close resemblance. Officers later confirmed that they had arrested the correct man.

After his arrest the defendant was advised of his rights, waived them, and agreed to be interviewed by Lieutenant Laviolet of the Lake Charles Police Department and Special Agent Thomas Faison of the Bureau of Alcohol, Tobacco and Firearms (ATF) (Tr. III, pp. 18-20). The statement was videotaped and admitted at trial (Exh. 33; Tr. I/II, pp. 76-77; Tr. III, p. 20). The agents discussed with the defendant his drug dealing, including the January 23rd incident involving Mullins, and his acquisition of the three firearms from "Wild Bill" (Gov. Exh. 33). In his statement the defendant said that he had purchased crack from different people, including a fairly large dealer named, Michael Lyons. The defendant needed a firearm for protection. He would wait until "Wild Bill" came riding through his area looking for crack and would approach him about buying one. The defendant would immediately provide "Wild Bill" with the appropriate quantity of crack and "Wild Bill" would later leave a firearm for the defendant under a trash can at a recreation center in Mossville. The defendant also provided information on another significant crack supplier from Mossville known to the defendant only as "Rollo." Based upon the extensive amount of detail the defendant provided in his statement concerning "Wild Bill," Special Agent Faison believed this statement truthful (Tr. III, p. 24).

Subsequent investigation revealed that officers with the Sulphur Police Department were familiar with a subject named "William Elliott," who was known by the aliases "Wild Bill" and/or

4

"Wild Bill Elliott." They learned that there is a store called "The Outpost" in Sulphur or Westlake, which is owned by a man named "Greg Elliott" at which guns are sold (Tr. III, pp. 126-127). Investigators were also aware of an individual named Bobby Doxen, who used the alias "Roll-Up," and who sold crack cocaine in the area of Princess Street in Mossville (Tr. III, p. 128). The government presented testimony regarding these facts as rebuttal testimony after the defendant had denied the truth of his statement to Laviolet and Faison, regarding the defendant's acquisition of the firearms from "Wild Bill."

On January 11, 2005, prior to any of the events recounted above, the defendant had been apprehended and arrested at a business located at 441 South Goodman Road in Lake Charles. In the course of the routine search incident to arrest the officers found two baggies later determined to contain .59 grams of crack cocaine. Expert testimony at trial confirmed that this quantity was inconsistent with personal use and was in the range of what a street dealer would likely possess. This incident was admitted at trial as Rule 404(b) evidence (Tr. III, pp. 33-42).

## Procedural History

The defendant was indicted in a superseding indictment with three counts of distribution of cocaine base, in violation of 21 U.S.C. § 841(a)(1) (Counts 1, 5, 7); one count of possession of cocaine base with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (Count 3); four counts of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (Counts 2, 4, 6, 8); one count of possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. § 922(k) (Count 9); and one count of forfeiture pursuant to 18 U.S.C. § 924(d)(1) (Count 10) (Doc. 16).

Before jury selection, the defendant announced his intention to plead guilty to Counts 3 and

4 of the superseding indictment. After conducting a full *Boykin* examination this court accepted the defendant's guilty plea to those two counts and the defendant proceeded to trial on the remaining counts. The jury returned guilty verdicts against the defendant on all counts of the superseding indictment (Doc. 80).

The defendant filed a motion for judgment of acquittal or alternatively for a new trial as to those counts of which he was convicted at trial (Doc. 89). The defendant's motion was denied(Docs. 91-92).

At sentencing, the defendant was sentenced to 168 months imprisonment on Counts 1, 3, 5, and 7 and to 60 months on Count 9 running concurrently with the 168 months imprisonment on Counts 1, 3, 5, and 7. He was sentenced to 10 years on Count 4 running consecutively to all other sentences and 25 years imprisonment on Counts 2, 6, and 8 running consecutively to each other and to all other sentences. The defendant's total sentence is 99 years (Doc. 105).

The Fifth Circuit affirmed the defendant's conviction and sentence in a published decision. *United States v. Sterling*, 555 F.3d 452 (5th Cir. 2009).

The defendant then filed a petition for writ of certiorari with the Supreme Court. On May 18, 2009, the Supreme Court denied the defendant's petition for writ of certiorari under docket number 08-9889.

The defendant placed this motion under 28 U.S.C. § 2255 in prison mail on May 13, 2010 and it was received at the Western District of Louisiana on May 18, 2010. The defendant's motion is timely filed.

Analysis

The defendant asserts several grounds for his §2255 motion:

1)     4th and 14th Amendment violations. The defendant asserts that the searches and seizures were conducted pursuant to an anonymous call on March 1, 2005. A warrant was then issued on March 3, 2005, based upon a false statement and the search of the residence on March 10, 2005, was conducted pursuant to that warrant.

2)     5th and 14th Amendment violations. The defendant asserts that the convictions were based upon illegally seized evidence, that the Superseding Indictment was defective, the confessions were coerced and he was denied effective assistance of counsel.

3)     6th Amendment violations. The defendant asserts that trial counsel was ineffective as she failed to conduct pretrial discovery, competently litigate the defendant's 4th Amendment claims, challenge the voluntariness of his confessions, move to strike the Superseding Indictment, provided erroneous advice to induce a guilty plea, "compelled Sterling to be a witness against himself," to present exculpatory evidence, competently litigate Rule 29 and Rule 33 motions, had a conflict of interest, and denied Sterling the right to appeal. Sterling alleges that appeal counsel was ineffective by failing to conduct a reasonable investigation and through failing to raise the proper issues on appeal.

4)     The defendant asserts that he involuntarily entered his guilty plea and waived his rights due to ineffective assistance of counsel.

The only issues cognizable under 28 U.S.C. § 2255 are jurisdictional and constitutional issues, and in rare circumstances non-constitutional and non-jurisdictional errors, not raised on appeal, which could result in a "complete miscarriage of justice."[2]

Collateral review is fundamentally different from and may not replace a direct appeal.[3] Even if the issues are constitutional or jurisdictional, the defendant may be procedurally barred from raising them collaterally. A defendant may not raise an "issue [constitutional or jurisdictional in nature] for the first time on collateral review without showing both 'cause' for his procedural default,

---

[2] *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998); *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1996); *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994).

[3] *United States v. Frady*, 456 U.S. 152, 102 S. Ct. 1584, 71 L.Ed.2d 816 (1982); *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir.1991) *(en banc)*.

and 'actual prejudice' resulting from the error."[4]

Even if a defendant cannot establish "cause" and "prejudice," he may still be entitled to relief under § 2255 if there is a constitutional error which would result in a complete miscarriage of justice.[5] Such a miscarriage of justice would result if the error caused the defendant to be convicted of a crime of which he is innocent.[6]

A criminal defendant who fails to raise an available issue on direct appeal is procedurally barred from raising the claim in a § 2255 motion, absent a showing of cause and prejudice or a fundamental miscarriage of justice.[7] A showing of a fundamental miscarriage of justice can be shown if a prisoner can establish actual innocence.[8] To do so, the prisoner must demonstrate that, "in light of all of the evidence, it is more likely than not that no reasonable juror would have convicted him."[9]

**Ground 1**

---

[4] *United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir.1994) (citing *Shaid*, 937 F.2d at 232); *United States v. Walker*, 68 F.3d 931, 934 (5th Cir.1995).

[5] *Murray v. Carrier*, 477 U.S. 478, 495-96, 106 S. Ct. 2639, 2649, 91 L.Ed.2d 397 (1986); *Bousley v. United States*, 523 U.S. 614, 620-2, 118 S. Ct. 1604, 1610-1611, 140 L.Ed.2d 828 (1998); *United States v. Ward*, 55 F.3d 412, 414 (5th Cir. 1995); *Shaid*, 937 F.2d at 232; *United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir. 1992); *United States v. Hicks*, 945 F.2d 107, 108 (5th Cir. 1991).

[6] *Shaid*, 937 F.2d at 232; *United States v. Williams*, No. 05-30014-01, 2008 WL 5532099, *2 (W.D.La. 12/04/2008).

[7] *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994).

[8] Id. at 1465 n.5.

[9] *Jones v. United States*, 153 F.3d 1305, 1308 (11th Cir. 1998) (internal quotations and citations omitted).

The defendant asserts that the searches and seizures were conducted pursuant to an anonymous call on March 1, 2005. A warrant was then issued on March 3, 2005, based upon a false statement and the search of the residence on March 10, 2005, was conducted pursuant to that warrant. The defendant alleges that Calcasieu Parish Deputy Danny Sexton testified that on March 5, 2005, he searched Sterling and seized a Lorcin L .380 caliber semiautomatic pistol pursuant to an anonymous call. Sterling's clothes allegedly matched those described by the caller. The defendant argues that the search based upon these facts was unreasonable.

The defendant further argues that Detective David Burnett filed an affidavit dated March 3, 2005, charging the defendant with illegal possession of a stolen firearm with an offense date of January 24, 2005. Sterling submits that a warrant was then issued based upon this alleged false statement and misrepresentation.

Prior to trial, the defendant filed a motion to suppress all of the evidence obtained as a result of the search of the residence on March 10, 2005. He also requested that any statement he made be suppressed. A hearing was held and the motion was denied. This court held that Sterling was arrested pursuant to a lawful arrest warrant that was lawfully executed.

The defendant is procedurally barred from raising these issues collaterally. A defendant may not raise an issue for the first time on collateral review without showing both "cause" for his procedural default, and "actual prejudice" resulting from the error. Sterling could have raised the validity of the seizures on appeal, but chose to focus his argument on the validity of the confession. Sterling failed to establish cause or actual prejudice from his counsel's failure to raise this issue on direct appeal.

**Ground 2**

Sterling asserts that the convictions were based upon illegally seized evidence, that the Superseding Indictment was defective, the confessions were coerced and he was denied effective assistance of counsel.

Evaluating whether counsel was ineffective is subject to the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The test requires first, "a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment," and second, a showing that the deficient performance so prejudiced the defense that the defendant was deprived of a fair and reasonable trial.[10] The burden that *Strickland* poses on a defendant is severe.[11]

One way to satisfy the deficiency prong of the *Strickland* test is for the defendant to demonstrate that counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards.[12] Given the almost infinite variety of trial techniques and strategies available to counsel, this court must be careful not to second guess legitimate strategic choices which may now, in retrospect, seem questionable or even unreasonable. The Fifth Circuit has stressed that, "great deference is given to counsel, 'strongly presuming that counsel has exercised

---

[10] *Uresti v. Lynaugh*, 821 F.2d 1099, 1101 (5th Cir. 1987) (quoting *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064); *United States v. Gibson*, 985 F.2d 212, 215 (5th Cir. 1993).

[11] *Proctor v. Butler*, 831 F.2d 1251, 1255 (5th Cir. 1987).

[12] *Martin v. McCotter*, 798 F.2d 813, 816 (5th Cir. 1986), *cert. den.*, 107 S.Ct. 934, 479 U.S. 1056, 93 L.Ed.2d 985 (1987).

reasonable professional judgment.'"[13]

In evaluating counsel's alleged ineffective assistance "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding."[14] Rather, the defendant must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine such confidence in the outcome.[15]

Sterling argues that his attorney was ineffective for failing to argue that the Grand Jury had issued a defective indictment, the conviction was obtained by a biased jury[16], and the conviction was based upon coerced confessions. The sufficiency of the indictment and the jury bias arguments could have been raised on direct appeal, but were not. The voluntariness of the confession was an issue raised on appeal and rejected by the court.

To the extent that the defendant argues that his indictment was illegal for failure to include an amount of drugs, such amount need not be included if the sentence is not increased by that stated amount. Counts One, Five and Seven do not state a specific amount of drugs. Therefore, the defendant's sentence cannot exceed the twenty-year term provided in 21 U.S.C. § 841(b)(1)(C) for any of those offenses. However, Count Three charges an amount of crack cocaine in excess of 50 grams, which places the defendant's sentence within the highest sentencing range, pursuant to 21

---

[13] *Id.* at 816 (quoting *Lockart v. McCotter*, 782 F.2d 1275, 1279 (5th Cir. 1986), *cert. den.*, 479 U.S. 1030, 107 S.Ct. 873, 93 L.Ed.2d 827 (1987)).

[14] *Strickland*, 466 U.S. at 693, 104 S.Ct. at 2067.

[15] *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

[16] The defendant provides no specific allegations of how the jury was allegedly biased.

U.S.C. § 841(b)(1)(A) rather than the lowest term provided by Section 841(b)(1)(C). Sterling has failed to assert or prove that his indictment was deficient in any way.

Defense counsel filed a motion to suppress the seizure of the firearms and the defendant's statements. The court held that the arrest and seizure were valid and the statements were voluntary. The failure to raise any additional issues was clearly trial strategy and defense counsel was not ineffective for failing to raise further claims, which had no valid support in the law.

Neither has Sterling established that the allegedly deficient performance by counsel prejudiced his defense.[17] Sterling does not point out any legitimate ground on which this additional evidence could have been suppressed or ruled inadmissible. The Fifth Circuit has made it clear that counsel is not required to make futile motions or objections,[18] so the failure to do so is not ineffective assistance of counsel.

**Ground 3**

The defendant asserts that trial counsel was ineffective as she failed to conduct pretrial discovery, competently litigate the defendant's 4th Amendment claims, challenge the voluntariness of his confessions, move to strike the Superseding Indictment, provided erroneous advice to induce a guilty plea, "compelled Sterling to be a witness against himself," failed to present exculpatory evidence, failed to competently litigate Rule 29 and Rule 33 motions, had a conflict of interest, and denied Sterling the right to appeal. Sterling alleges that appeal counsel was ineffective by failing to conduct a reasonable investigation and failing to raise the proper issues on appeal.

Defense counsel filed a request for discovery and the government filed a request for

---

[17] *Mullins*, 315 F.3d at 456.

[18] See *Murray v. Maggio,* 736 F.2d 279, 283 (5th Cir.1984) (per curiam).

reciprocal discovery (Docs. 12-13). Further, at the motion to suppress hearing, defense counsel stated she had sought to have the government furnish every vital piece of evidence necessary for the defense (MTS, p. 41). In response, the government stated "We have provided far beyond what the defense is required to have in all the reports we provided, because the reports are essentially *Jencks Act* and do not have to be provided until before the officer who prepared them testifies. We've provided all of that to the defense." (MTS, p. 41).

With respect to the defendant's right to have a copy of the arrest warrant furnished as part of discovery this court ruled that this is not part of discovery. (MTS, p. 43). A continuance was granted to complete the motion to suppress hearing. In the second hearing on the motion to suppress defense counsel acknowledged receiving a variety of materials through the discovery process (MTS, 1/19/06, p. 28).

The 404(b) evidence concerning the robbery, which the defendant and his brother committed, was discussed at the end of the suppression hearing. Defense counsel was fully aware of it and successfully limited that testimony at trial to exclude any reference to the robbery or the firearm used in the robbery, but only to allow the seizure of crack cocaine from the defendant to be admitted at trial (MTS, 1/19/06, pp. 37-42).

**Ground 4**

As part of Ground 3 and Ground 4, Sterling attacks the validity of his guilty plea. Sterling claims that his counsel gave him erroneous advice and misinformation to induce him to enter an involuntary guilty plea. The Fifth Circuit has stated that when a criminal defendant has solemnly admitted in open court that he is, in fact, guilty of the offense with which he is charged he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred

prior to the entry of the guilty plea. *United States v. Smallwood*, 920 F.2d 1231, 1240 (5th Cir. 1991). Defendant has not sought to withdraw his guilty plea, nor has he stated what specific misinformation he was given prior to his guilty plea which induced him to plead guilty.

At his guilty plea the district judge asked defendant if he was satisfied with the representation his attorney had provided to him and he replied "Yes. She's excellent." (Tr. Vols. 1 and 2, p. 13). He also denied being forced, threatened or coerced to plead guilty. He acknowledged an understanding of each of the rights that he was waving. The district judge found a factual basis to accept the defendant's guilty plea and the defendant pleaded guilty (Tr. Vols. 1 and 2, p. 18). Under these circumstances the Supreme Court's statement that solemn declarations in open court carry a strong presumption of verity, forming a formidable barrier in any subsequent collateral proceeding, carries great weight. *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998). The defendant's memorandum furnishes no additional support for his claim that he was misinformed or pleaded guilty involuntarily. His counsel successfully kept highly prejudicial evidence regarding those two offenses out of consideration had there been a trial.

## Conclusion

Sterling has failed to establish cause and prejudice when addressing issues not raised on direct appeal. Further, he has failed to establish ineffective assistance of counsel. Accordingly, for the reasons stated herein, the defendant's §2255 Motion will be denied.

Lake Charles, Louisiana, this 5 day of August, 2010.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE