UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO.  2:05-CR-20061-01 |
| VERSUS | JUDGE ROBERT G. JAMES |
| JUSTIN PAUL STERLING | MAGISTRATE JUDGE KAY |

## RULING

Defendant Justin Paul Sterling seeks a reduction of sentence pursuant to sections 403, 404 and 603(b) of the First Step Act of 2018 ("FSA"). [ECF Nos. 257, 258]. The government opposes Sterling's motion for reduction pursuant to §§ 403 and 603(b) of the FSA. [ECF No. 260]. For the reasons that follow, Sterling's motions are GRANTED IN PART and DEFERRED IN PART.

## I.
### BACKGROUND

The facts of this case have been set forth previously by the Fifth Circuit:

> On three separate occasions within a two-month period, the police recovered handguns possessed by Sterling. On January 23, 2005, Keith Mullins approached Sterling and asked if he had any crack to sell. As Sterling broke off the requested quantity, Mullins punched him in the face and grabbed the drugs. During a struggle, Sterling drew an RG Model 14 .22 caliber revolver and shot Mullins in the hand and abdomen. Undeterred by his wounds and assisted by his wife, Mullins seized Sterling's gun, drugs, and money and escaped. Mullins reported the incident to the police and turned over the RG revolver.
>
> The next day, after being advised of his *Miranda* rights, Sterling gave a written statement to the police in which he described the robbery and shooting. Sterling further explained that he purchased the revolver for $20 from a drug addict named "Wild Bill," who drove an old white camper van with a brown stripe down the side. Sterling was not arrested.
>
> On March 1, a Calcasieu Parish Sheriff's Officer stopped Sterling as he walked along the road because he fit the description of a suspect reported to be engaged in narcotics trafficking. Sterling consented to a search, and the deputy discovered a Lorcin .380 caliber pistol in his pocket but found no drugs. Sterling was arrested, given a misdemeanor summons, and released.

> Detectives eventually traced the RG revolver Sterling used to shoot Mullins and learned that it had been stolen from its registered owner in a burglary. A warrant was issued to arrest Sterling for possession of the stolen revolver. The police served the warrant and arrested Sterling on the morning of March 10 at the trailer of Renata Guillory. As police moved Sterling from the couch where he was sleeping, they discovered he was lying atop a Bryco .380 caliber pistol. The serial number on the gun had been scratched off.
>
> In a videotaped interview, Sterling explained to the police that he purchased all three pistols from "Wild Bill" in exchange for crack cocaine. As in his previous statement, he explained that Wild Bill lived in Sulphur and drove a white camper with a brown stripe. When Wild Bill would drive around the neighborhood, Sterling would ask him about buying a pistol and immediately furnish the crack. Sterling could later retrieve the gun from under a trash can. Sterling provided a detailed description of Wild Bill and his vehicle.

*United States v. Sterling*, 555 F.3d 452, 454–55 (5th Cir. 2009).

Sterling was charged by federal prosecutors with various drug and firearm offenses arising out of the Mullins incident and the statements Sterling made to police about trading crack to Wild Bill for firearms. Specifically, Sterling was charged with one count of distribution of cocaine base arising out of the attempted sale to Mullins; one count of possession of a firearm in furtherance of a drug trafficking crime for using the .22 revolver to defend his drugs from Mullins; three counts of distribution of cocaine base for giving crack to Wild Bill; three counts of possession of a firearm in furtherance of a drug trafficking crime for purchasing the pistols from Wild Bill with crack; and one count of possession of a firearm with an obliterated serial number. [ECF No. 16]. On the morning of trial, Sterling pleaded guilty without a plea agreement to the counts involving the incident with Mullins (Counts 3 and 4), but went to trial on the remaining charges. [ECF Nos. 67, 69].

On February 2, 2006, following a four-day jury trial, Sterling was convicted on all remaining counts. [ECF No. 80]. The Court held a sentencing hearing the following December. The sentencing judge expressed her displeasure on the record with the sentence she was mandated

by statute to impose.[1] Sterling was sentenced as follows: 168 months for the crack offenses (Counts 1, 3, 5 and 7); ten years for possession of a firearm in furtherance of a drug trafficking crime for the incident with Mullins (Count 4); twenty-five years on each remaining charge of possession of a firearm in furtherance of a drug trafficking crime for the incidents with Wild Bill (Counts 2, 6 and 8); and five years for possession of a firearm with an obliterated serial number (Count 9). The Court ordered Counts 1, 3, 5, 7 and 9 to run concurrently, and Counts 2, 4, 6, and 8 to run consecutively to each other and consecutively to Counts 1, 3, 5, 7 and 9. Thus, Sterling was sentenced to a total term of imprisonment of ninety-nine (99) years. [ECF No. 105]. The Court additionally imposed a five-year term of supervised release following imprisonment.

Sterling's sentence was affirmed on appeal. The opinion, authored by then Chief Judge Edith H. Jones, opened as follows:

> We are required to affirm a conviction for offenses that led inexorably to a 99–year sentence of imprisonment for a young, addicted drug dealer. This sentence exceeds, in this court's experience, what has been meted out to some drug trafficking kingpins. Why the Government chose to pile on its indictment against Sterling, especially after he pled guilty to the Mullins incident, is not ascertainable from the Pre–Sentence Report ("PSR"). This court is obliged to apply the law, but we expect that the prosecutor's nearly unfettered discretion will not be abused. Here, we are not so confident of that precondition to justice.

---

[1] At sentencing, Judge Patricia H. Minaldi stated:

> I don't have a whole lot of room on this case. I do have to say that, although I don't condone anything that Mr. Sterling has done or the way that he's conducted himself, I feel that the mandatory minimums in this case and the guidelines impose a sentence that is too great. Yet, I don't feel like I have enough reason to disregard the guideline range. Even if I could, I still have the mandatory minimums, so it really doesn't make all that much difference. But I do regret that I don't have more discretion here, although, Mr. Sterling will be serving a substantial sentence. And I think there is a possibility that he can be rehabilitated and perhaps become a productive member of society based on the sentence I have to give him here today. I'm not sure what the likelihood of that is.

[ECF No. 252-1 at 1].

*United States v. Sterling*, 555 F.3d 452, 454 (5th Cir. 2009).

In the years that followed, Sterling's sentence on Counts 1, 3, 5 and 7 was reduced to 120 months due to retroactive amendments to the Sentencing Guidelines. [ECF Nos. 125, 186]. Thus, Sterling's total term of imprisonment is now ninety-five (95) years – effectively a life sentence. Sterling seeks a reduction of sentence on two bases: first, he asks that his sentence for the narcotics convictions (Counts 1, 3, 5 and 7) be reduced pursuant to section 404 of the FSA [ECF No. 257]; second, he asks that his sentences for the 924(c) convictions be reduced pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by section 603(b) of the FSA. [ECF No. 258]. The Court now turns to the merits.

## II.
### MOTION FOR SENTENCE REDUCTION
### PURSUANT TO SECTION 404 OF THE FIRST STEP ACT OF 2018

At the time Sterling was sentenced, 21 U.S.C. § 841(b)(1) mandated a sentence of ten years to life for offenses involving fifty grams or more of cocaine base, five to forty years for offenses involving between five and fifty grams of cocaine base, and a maximum of twenty years for offenses involving less than five grams of cocaine base.[2] On August 3, 2010, after more than two decades of substantial criticism from the United States Sentencing Commission and others in the law enforcement community that the harsh treatment of crack cocaine offenses was fundamentally unfair when compared to offenses involving powder cocaine, Congress passed the Fair Sentencing Act. *Dorsey v. United States*, 567 U.S. 260, 268 (2012). Section 2 of the Fair Sentencing Act amended 21 U.S.C. § 841(b)(1)(A)(iii) by increasing the 50-gram threshold for cocaine base convictions to 280 grams. *See* 124 Stat. at 2372. Section 2 similarly amended § 841(b)(1)(B)(iii)

---

[2] *See* 21 U.S.C. § 841(b)(1)(A)(iii), (b)(1)(B)(iii), and (b)(1)(C) (West 2005).

by increasing the 5-gram cocaine base threshold to 28 grams. *Id.* The Fair Sentencing Act took effect on August 3, 2010 but applied only to sentences imposed thereafter. *Dorsey* at 264.

In 2018, Congress passed the First Step Act, which made the revised crack cocaine minimums established by the Fair Sentencing Act retroactive. First Step Act of 2018, Pub. L. No. 115-391, § 404, 132 Stat 5194 (2018). Section 404 of the First Step Act provides:

> (a) DEFINITION OF COVERED OFFENSE.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . , that was committed before August 3, 2010.
>
> (b) DEFENDANTS PREVIOUSLY SENTENCED.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed.
>
> (c) LIMITATIONS.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 . . . or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

*Id.*

In this matter, the United States Office of Probation, the United States Attorney's Office, and the Federal Public Defender's Office all agree that Sterling is eligible for relief on Count 3 pursuant to section 404 of the First Step Act. *See* Retroactivity Report at 1. Sterling was convicted of violating a statute for which the penalties were modified by Section 2 of the Fair Sentencing Act (Count 3), his violation occurred before August 3, 2010, and he has not filed a previous motion seeking First Step Act relief, nor was his sentence "previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act."

Accordingly, the Court finds Sterling is eligible for relief under the First Step Act. The extent of the reduction will be determined at a later date. *See* § IV, *infra*.

## III.
### MOTION FOR SENTENCE REDUCTION
### PURSUANT TO SECTION 603(B) OF THE FIRST STEP ACT OF 2018

The First Step Act of 2018 made two additional changes to the law that are relevant to Sterling. First, the Act made a "monumental" change to sentencing calculations under 18 U.S.C. § 924(c). *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020). Section 924(c) requires five to ten-year mandatory minimum sentences for using or carrying a firearm "during and in relation to" a drug trafficking crime, depending on the circumstances.[3] For a "second or subsequent conviction," the statute mandates a consecutive 25-year minimum sentence. In 1993, the Supreme Court determined that the phrase "second or subsequent conviction" triggered the 25-year minimum sentence even if the first 924(c) conviction was obtained in the same case. *Deal v. United States*, 508 U.S. 129, 132 (1993). Thus, a defendant was subjected to the 25-year enhancement on each additional 924(c) charge, "even though the first conviction [was] part of the same indictment and/or the same course of conduct." *United States v. Charles*, 62 F.3d 395, *5 (5th Cir.1995) (citing *Deal* at 133 n. 1). For twenty-five years following *Deal*, the courts "stacked" consecutive sentences for gun charges in this manner.

The First Step Act ended this practice. Section 403 of the FSA ("Clarification of section 924(c)") revised section 924(c) by providing that the higher penalty for a "second or subsequent count of conviction" is triggered only if the defendant has a prior 924(c) conviction that "has become final." 18 U.S.C. § 924(c)(1)(C); 132 Stat. 5194 at § 403; *see also United States v. McCoy*,

---

[3] The statute mandates a five-year consecutive term of imprisonment for carrying a firearm in connection with a drug trafficking offense, seven years consecutive for brandishing a firearm, and ten years consecutive for discharging a firearm. 18 U.S.C. § 924(c).

981 F.3d 271, 275 (4th Cir. 2020). Stated differently, "[u]nder § 403 of the First Step Act, . . . the 25-year mandatory minimum is 'reserved for recidivist offenders, and no longer applies to multiple § 924(c) convictions obtained in a single prosecution.'" *McCoy* at 275 (quoting *United States v. Jordan*, 952 F.3d 160, 171 (4th Cir. 2020)). However, the changes to 924(c) apply only to sentences imposed after December 21, 2018. First Step Act of 2018, Pub. L. No. 115-391, § 403, 132 Stat. 5194 (2018); *see also United States v. Davis*, 139 S.Ct. 2319, 2324 n.1 (2019); *United States v. Ross*, 793 Fed.Appx. 334 (5th Cir. 2020).

The second relevant change from the First Step Act is to 18 U.S.C. § 3582(c)(1)(A), frequently referred to as the "compassionate release" statute. As a general rule, a federal court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). One exception to that rule is provided by section 3582(c)(1)(A), as amended by § 603(b) of the First Step Act. Section 3582(c)(1)(A), as amended, permits a court to modify an imposed term of imprisonment at the request of a defendant when the following criteria are met: (1) the defendant has either exhausted his administrative remedies, or waited thirty days after filing a request with the Bureau of Prisons before filing his motion with the court; (2) extraordinary and compelling reasons warrant a reduction; (3) a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and (4) the court has considered the factors set forth in 18 U.S.C. § 3553(a).[4] 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Thompson*, -- F.3d --, 2021 WL 37493, *1 (5th Cir. Jan. 5, 2021) ("[I]f extraordinary and compelling reasons justify a reduction,

---

[4] Prior to passage of the First Step Act, courts could consider compassionate release only upon motion of the BOP. Section 603(b) of the First Step Act – "Increasing the Use and Transparency of Compassionate Release" – amended § 3582(c)(1)(A) to permit defendants to file such motions on their own behalf, as long as they first apply with the BOP. *See* Pub. L. No. 115-391, 132 Stat. 5194, 5239 § 603(b) (2018).

courts appropriately may reduce the sentence after considering the factors set forth in section 3553(a) . . . .") (internal quotation marks omitted).

In this matter, the government argues that granting compassionate release would not be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). According to the government, "[t]he Sentencing Commission . . . has identified in a policy statement, found in U.S.S.G. § 1B1.13, the 'extraordinary and compelling reasons' that exclusively govern compassionate release adjudications. . . ."[5] However, rather than discuss the policy statement, the government focuses exclusively on the application notes to that policy statement. [ECF No. 260 at 7-8]. Because Sterling does not meet the examples set forth in that commentary, the government contends he is ineligible for compassionate release. However, the commentary, while instructive, is not binding on the Court. *See e.g. Thompson*, 2021 WL 37493, *2.

Further, four Courts of Appeal have held that the Sentencing Commission's relevant policy statement (U.S.S.G. § 1B1.13) is not "applicable" to § 3582(c)(1)(A) motions filed directly by

---

[5] Section 1B1.13 provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction; or
>
> (B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

defendants (rather than by the Bureau of Prisons), and therefore it does not constrain the courts' discretion. *See United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 1101 (6th Cir. 2020); *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020); *see also United States v. Elias*, 2021 WL 50169, at *2 (6th Cir. Jan. 6, 2021).[6] The undersigned agrees with the reasoning of the foregoing cases.[7] Accordingly, the Court finds it may consider *any* extraordinary and compelling reason for release under the statute. *See e.g. Brooker* at 230; *McCoy* at 284.

The government next contends that because Congress did not make the amendments to § 924(c) retroactive, it is therefore "unreasonable to conclude that Congress nevertheless intended another portion of the First Step Act to allow defendants to benefit retroactively from the § 924(c) change." [ECF No. 260 at 13]. The Court disagrees. It is true that Congress did not find the disparity between sentences imposed before and after the amendments to 924(c), in and of itself, is a basis for reducing the sentences of an entire class of defendants. But that does not mean that Congress intended to prohibit courts from providing relief to *some* defendants on an *individual* basis. As discussed by the Fourth Circuit:

> As multiple district courts have explained, there is a significant difference between automatic vacatur and resentencing of an entire class of sentences – with its avalanche of applications and inevitable resentencings, – and allowing for the provision of individual relief in the most grievous cases. Indeed, the very purpose of § 3582(c)(1)(A) is to provide a safety valve that allows for sentence reductions when there is *not* a specific statute that already affords relief but extraordinary and compelling reasons nevertheless justify a reduction. . . . [W]e see nothing inconsistent about Congress's paired First Step Act judgments: that not *all* defendants convicted under § 924(c) should receive new sentences, but that the courts should be empowered to relieve *some* defendants of those sentences on a case-by-case basis.

---

[6] The Fifth Circuit has not yet decided the issue. *See e.g. United States v. Gowdy*, 2020 WL 7702579, at *2 (5th Cir. Dec. 28, 2020).

[7] Nevertheless, while the policy statement is not binding, the Court may and will consider it in the exercise of its discretion. *See Gunn*, 980 F.3d at 1180.

*McCoy* at 286–87 (internal citations and quotation marks omitted). The undersigned likewise finds it is not prohibited from granting a sentence reduction pursuant to § 3582(c)(1)(A) due to the non-retroactivity of the amendments to § 924(c). Rather, what is determinative is whether a defendant has shown extraordinary and compelling reasons warranting a reduction. The Court finds Mr. Sterling has done just that.

Putting Sterling's sentence in context, consider that in fiscal year 2019 the average sentence for defendants with a criminal history category of IV, who were convicted of robbery in the federal courts, was 112 months; the median sentence was 92 months.[8] Sterling's sentence is 1,140 months. The average sentence in federal court that same year for murder, coupled with a criminal history category of IV, was 285 months; the median sentence was 276 months.[9] Sterling was sentenced to 1,140 months. If Sterling had been sentenced under the current version of 924(c), he would be exposed to a statutory, minimum term of imprisonment of twenty-five to thirty years – not ninety-five.[10]

Mr. Sterling was barely an adult, not even of drinking age, when he committed the conduct for which he was sentenced to ninety-five years in prison.[11] Sterling's convictions are based on conduct which occurred when he was eighteen and nineteen years old. While his criminal history

---

[8] *See U.S. Sentencing Comm'n Interactive Data Analyzer*, available at https://ida.ussc.gov/analytics/saw.dll?Dashboard (last visited Jan. 15, 2021).

[9] *Id.*

[10] *See* ECF No. 258 at 20 & n.4 (advocating for a 25-year mandatory minimum sentence); ECF No. 260 at 9 & n.2 (advocating for a 30-year mandatory minimum sentence).

[11] The sentencing judge had no discretion to consider youth as a mitigating factor at the time of sentencing due to the Supreme Court's interpretation of the 924(c) recidivist provisions. However, the undersigned finds Sterling's youth at the time of the offenses is a factor to be considered in determining whether Sterling has shown "extraordinary and compelling" reasons justifying a sentence reduction pursuant to § 3582(c)(1)(A). *See e.g. Johnson v. Texas*, 509 U.S. 350, 367 (1993); *Roper v. Simmons*, 543 U.S. 551, 570 (2005).

category is IV, the Court finds it is vastly overstated. First, Sterling was assessed two criminal history points pursuant to a provision of the sentencing guidelines that has now been repealed. *See* ECF No. 199 at 15, ¶ 51. The omission of these two criminal history points reduces Sterling's criminal history category to III. Second, a closer look at Sterling's criminal history shows it is not nearly as alarming as one would expect when a 99-year term of imprisonment is imposed. Sterling has three prior criminal convictions. The first – Criminal Trespass and Criminal Mischief due to vandalism of a softball field – was incurred when Sterling was thirteen years old. The second, Theft of Goods – an 8 oz. bag of Star Burst Fruit Chews – was incurred at age fourteen. Sterling's last conviction was for Criminal Trespass and Resisting an Officer by providing a false identity. Sterling was convicted of this offense at age seventeen. Mr. Sterling will be thirty-five years old in a month. He has been incarcerated for this offense for almost sixteen years. His projected release date is July 28, 2087.

The Court finds that Mr. Sterling's age at the time of conviction, the length of his sentence when compared to current sentencing law, the fact that both the sentencing court and the appellate court found the sentence was excessive, and the fact that Congress itself has concluded that a stacked sentence for a non-recidivist is dramatically longer than necessary to achieve the purposes of sentencing, all establish that there are "extraordinary and compelling" reasons to reduce this particular sentence. Accordingly, the Court finds Mr. Sterling is eligible for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A) and (c)(1)(B).[12]

---

[12] Sterling is eligible for a sentence reduction pursuant to § 3582(c)(1)(A) for his 924(c) convictions, and he is eligible for a reduction pursuant to § 3582(c)(1)(B) for his narcotics convictions.

## IV.
### CONCLUSION

For the reasons forth above, the Defendant's motions for sentence reductions [ECF Nos. 257, 258] will be granted. The Court will schedule a hearing, by video, at which the parties may both present arguments regarding what they believe would be an appropriate sentence in light of the 3553(a) factors.

The Clerk of Court is INSTRUCTED to terminate ECF No. 249 and ECF No. 252 as moot. *See* ECF Nos. 257, 258.

SIGNED this 19th day of January, 2021.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE