UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO. 2:05-CR-20061-01** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **JUSTIN PAUL STERLING (01)** | **MAGISTRATE JUDGE KAY** |

## RULING

On January 19, 2021, the Court issued a Ruling finding Defendant Justin Paul Sterling is eligible for a sentence modification pursuant to sections 404 and 603(b) of the First Step Act of 2018. [ECF No. 262]. On February 22, 2021, the Court heard arguments as to an appropriate modification. The Defendant was present at the hearing and addressed the Court with regard to mitigation of his sentence. [ECF No. 266]. Counsel have submitted sentencing memoranda in support of their respective positions as to the appropriate amount of any reduction. [ECF Nos. 263-265]. After a full review of this matter, the Court finds as follows: Sterling's term of imprisonment will be REDUCED from ninety-five (95) years to twenty-five (25) years.

**I.**
**MOTION FOR SENTENCE REDUCTION**
**PURSUANT TO SECTION 603(B) OF THE FIRST STEP ACT**

**A.   Legal Standard**

As a general rule, courts may not modify a term of imprisonment once it has been imposed. One exception to that rule is found in 18 USC § 3582(c)(1)(A) (commonly referred to as "compassionate release") which, as relevant here, permits a court to "reduce the term of imprisonment" if the court finds: (1) extraordinary and compelling reasons warrant a reduction; (2) a reduction is "consistent with applicable policy statements issued by the Sentencing

Commission"; and (3) the 3553(a) factors support relief. 18 U.S.C.A. § 3582(c)(1)(A). The Court previously found that Sterling has demonstrated that extraordinary and compelling reasons warrant a reduction.[1] *See* ECF No. 262 at 11. By this motion, Sterling seeks a reduction to the terms of imprisonment imposed for his four violations of 18 U.S.C. § 924(c).

**B.     Discussion**

Sterling was charged with four violations of 18 U.S.C. § 924(c) (possession of a firearm during a drug trafficking crime), resulting in a statutory mandatory term of imprisonment of eighty-five years. Specifically, Sterling was sentenced to ten years on Count 4, and twenty-five years each on Counts 2, 6 and 8, with each sentence running consecutively. Sterling asks that his sentence on the foregoing counts be reduced to twenty years, and that his total term of imprisonment be reduced to twenty-five years. [ECF No. 265 at 9]. In support of the requested reduction, Sterling contends that if he were sentenced today, he would face a statutory minimum sentence of twenty years on the § 924(c) charges (i.e., five years on each Count), arguing:

> The 10-year sentence on Count 4 was presumably imposed under the "discharge" provision of § 924(c)(1)(A)(iii). Under *Alleyne v. United States*, 570 U.S. 99 (2013), any fact that increases a mandatory minimum is an "element" of the crime that must be submitted to the jury and proved beyond a reasonable doubt or admitted by the defendant. Here, Sterling pled guilty to Count 3 and admitted only that he "possessed" the firearm, not that he "discharged" the firearm. Indeed, the indictment did not allege "discharge" in Count 4 nor did it cite to the discharge subsection of § 924(c). Sterling's sentence under Count 4 would be five years consecutive under today's laws.

---

[1] Specifically, the Court found:

> Mr. Sterling's age at the time of conviction, the length of his sentence when compared to current sentencing law, the fact that both the sentencing court and the appellate court found the sentence was excessive, and the fact that Congress itself has concluded that a stacked sentence for a non-recidivist is dramatically longer than necessary to achieve the purposes of sentencing, all establish that there are "extraordinary and compelling" reasons to reduce this particular sentence.

ECF No. 262 at 11.

[ECF No. 265 at 8 n.2 (citations omitted)].

The government disagrees, arguing if sentenced today, Sterling would face a mandatory minimum sentence of twenty-five years on the § 924(c) charges:

> First, the Fifth Circuit has routinely stated that *Alleyne* is not retroactive. . . . Moreover, the First Step Act did not change § 924(c)'s ten-year minimum for discharging a gun, meaning that, if Sterling were sentenced today for the same offense, he would inarguably face a ten-year minimum for Count 4. . . .
>
> > In any event, the record shows Sterling effectively admitted to discharging the gun in connection with Count 4 of the indictment, thus satisfying Sterling's *Alleyne* concerns. First, as part of Sterling's trial-day plea to Count 4 of the indictment, the district court heard testimony used to provide a factual basis for the plea, which made plain that Sterling shot someone in the course of a drug deal. Sterling did not object to this testimony. In addition, Sterling acknowledged that he faced a ten-year minimum for Count 4, which would have applied only if Sterling actually "discharged" his gun.

[ECF No. 264 at 3-4 (citations omitted)]. According to the government, a total term of imprisonment of thirty years "is the new mandatory minimum, and fully remedies the 'extraordinary and compelling' reason for a reduction in sentence (i.e., inequity based on change in § 924(c) sentencing laws)." *Id.* at 2 (emphasis omitted).

Both parties are partially correct – the indictment gave no indication that Sterling was charged with *discharge* of a firearm in Count 4, thereby triggering an increase in the statutory minimum term of imprisonment; Sterling was not asked whether he admitted to any facts whatsoever in support of his guilty plea and therefore he did not explicitly admit that he discharged a firearm[2]; Sterling acknowledged that he faced a ten-year term of imprisonment on Count 4 in his

---

[2] The factual basis for Sterling's guilty plea was presented by a law enforcement officer who testified at the plea hearing. Sterling never verbally admitted the facts to which the officer testified (because he was not asked to do so), nor did he do so in writing, and therefore Sterling never *explicitly* admitted his guilt. Trial Vol. I and II, pp. 17-18.

plea documents[3]; and *Alleyne* does not apply retroactively to federal *habeas* petitions.[4] However, the Court disagrees with the government that a thirty-year sentence "fully remedies the 'extraordinary and compelling' reason for a reduction in sentence." First, unless there is relevant information to which the Court is not privy, this case appears to be a textbook example of overcharging by the prosecution. As then-Chief Judge Edith Jones stated on appeal:

> We are required to affirm a conviction for offenses that led inexorably to a 99–year sentence of imprisonment for a young, addicted drug dealer. This sentence exceeds, in this court's experience, what has been meted out to some drug trafficking kingpins. Why the Government chose to pile on its indictment against Sterling, especially after he pled guilty to the Mullins incident, is not ascertainable from the Pre–Sentence Report ("PSR"). This court is obliged to apply the law, but we expect that the prosecutor's nearly unfettered discretion will not be abused. Here, we are not so confident of that precondition to justice.

*United States v. Sterling*, 555 F.3d 452, 454 (5th Cir. 2009). Second, Sterling received no benefit whatsoever in exchange for his plea of guilty to the most serious offenses, which, in the Court's experience, is highly unusual in the federal system. Finally, as will be discussed in further detail, Sterling's youth and overstated criminal history at the time of the offense further demonstrate the draconian nature of the original sentence. Regardless, because this is a motion for compassionate release, the Court is not bound by the statutory minimum terms set forth in § 924(c), and therefore it need not resolve this issue for purposes of this motion. Accordingly, the Court turns to an analysis of whether the § 3553(a) factors support relief.

---

[3] ECF No. 68 at 1.
[4] While a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1) is a form of collateral review, *see Wall v. Kholi*, 562 U.S. 545, 551 (2011), it is not necessarily the case that the same nonretroactivity principles that apply to habeas petitions also apply to sentence reductions under § 3582(c)(1). *See United States v. Thompson*, 404 F.Supp.3d 1003, 1008-10 (W.D. La. 2019), *aff'd*, 827 Fed.Appx. 458 (5th Cir. 2020).

1.      18 U.S.C. § 3553(a)

Section 3553(a) instructs courts to impose a sentence "sufficient, but not greater than necessary" to accomplish the goals of sentencing. As relevant here, the factors courts are to consider include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, or other corrective treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established by the Sentencing Guidelines; (5) pertinent policy statements issued by the Sentencing Commission; and (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a).

The conduct for which Sterling was convicted occurred over a two-month period sixteen years ago, when Sterling traded crack for three firearms and sold crack as a street-level dealer. The most serious charges arose out of events that occurred on January 23, 2005. On that evening, a stranger (Keith Mullins) approached Sterling at a convenience store and asked if he had any crack to sell. Sterling advised that he did and directed Mullins to follow him to a more discreet location. Upon arrival at the second location, Mullins asked Sterling for $200 worth of crack. While Sterling was sitting behind the wheel of his vehicle breaking off the requested amount, Mullins attacked Sterling, punching him in the face. Mullins then grabbed Sterling's crack. During a struggle, Sterling drew a .22 caliber revolver and shot Mullins. Undeterred by his wounds and assisted by his wife, Mullins seized Sterling's gun, drugs, and money and escaped. Mullins then returned to

the convenience store and an unidentified person called the police.[5] The following day, officers located Sterling, and he confessed to the foregoing facts. Sterling further explained that he purchased the revolver for $20 from a drug addict named "Wild Bill," who drove an old white camper van with a brown stripe down the side. Sterling was not arrested.

A month later, a Calcasieu Parish Sheriff's Officer stopped Sterling as he walked along a road because he fit the description of a suspect possibly engaged in narcotics trafficking. Sterling consented to a search, and the deputy discovered a Lorcin .380 caliber pistol in Sterling's pocket, but no narcotics. Sterling was arrested, given a misdemeanor summons, and released.

Detectives eventually traced the .22 revolver involved in the Mullins incident and learned it had been stolen from its registered owner in a burglary. An arrest warrant issued due to Sterling's possession of the stolen revolver. The police served the warrant and arrested Sterling on the morning of March 10, 2005. As police moved Sterling from the couch where he was sleeping, they discovered he was lying on top of a Bryco .380 caliber pistol. The serial number on the gun had been scratched off. *Id.* Sterling then gave a videotaped confession and explained that he purchased all three pistols from "Wild Bill" in exchange for crack cocaine. As in his previous statement, Sterling explained that Wild Bill lived in Sulphur and drove a white camper with a brown stripe. When Wild Bill would drive around the neighborhood, Sterling would ask him about buying a pistol and would immediately furnish Wild Bill with crack. Sterling would later retrieve the gun from under a trash can. *See* ECF Nos. 139 at 1-3; 199 at 3-5; *United States v. Sterling*, 555 F.3d 452, 454-55 (5th Cir.2009).[6]

---

[5] Mullins' wounds were not serious, and he declined to give a statement or pursue charges. [ECF No. 199 at pp. 3-4, ¶ 16].

[6] The factual history recounted above is taken from *U.S. v. Sterling*, 555 F.3d 452, 454-44 (5th Cir. 2009), the Presentence Investigation Report [ECF No. 199 at 7-9], and the Ruling on Sterling's Motion to Vacate [ECF No. 139 at 1-5].

Thereafter, Sterling was indicted on one count of possession of cocaine base with attempt to distribute arising out of the attempted sale to Mullins (Count 3); one count of possession of a firearm in furtherance of a drug trafficking crime for using the .22 revolver to defend his drugs from Mullins (Count 4); three counts of distribution of cocaine base for giving crack to Wild Bill; three counts of possession of a firearm in furtherance of a drug trafficking crime for purchasing the pistols with crack; and one count of possession of a firearm with an obliterated serial number. Sterling pleaded guilty to Counts 3 and 4 and was convicted by a jury on all remaining counts. For these offenses, Sterling was sentenced to 99 years of imprisonment, which was later reduced to 95 years.

The offense conduct occurred when Sterling was eighteen and nineteen years old. At that time, Sterling was heavily using street drugs. Sterling's criminal history includes two juvenile convictions and one adult conviction. At age thirteen Sterling was adjudicated delinquent for vandalizing a softball field; at age 14 he was adjudicated delinquent for shoplifting an eight-ounce bag of Star Burst Fruit Chews, and at age eighteen Sterling was convicted of criminal trespass and resisting an officer.

As to Sterling's history and characteristics, he is the second oldest of five children. Sterling's older brother died of cancer when Sterling was four. Sterling and his siblings were raised by a single mother, and his father was largely absent from his life and did not contribute monetarily to their upbringing. Sterling was a gifted child and a talented chess player. Sterling's mother could not afford chess lessons or take off work for travel to tournaments, so Sterling was unable to pursue this positive extra-curricular activity. Further, Sterling was needed at home to care for his siblings. By age fourteen, Sterling was using marijuana. By sixteen, he had dropped out of school. At age

eighteen, Sterling was using crack, codeine and embalming fluid. By nineteen, Sterling had been sentenced to serve 99 years in federal prison.

Sterling's Bureau of Prisons ("BOP") disciplinary record is problematic. During his fifteen years in BOP custody, Sterling has had dozens of disciplinary events, the most serious of which include assaulting staff by head butting, threatening bodily harm, possession of narcotics, and possession of a dangerous weapon. At the hearing on these motions, Sterling acknowledged and accepted responsibility for his BOP disciplinary record. His counsel additionally notes that much of Sterling's disciplinary history is due to unfortunate circumstances: because of Sterling's youth and his (effective) life sentence, BOP assigned the nineteen year old, 138 pound Sterling to a high security penitentiary, "the most violent of the federal prisons."[7] [ECF No. 265 at 3]. One of the first facilities to which Sterling was assigned was USP Big Sandy. According to multiple media reports, that facility had several murders, stabbings, and other heinous acts of violence before, during and after Sterling's assignment to that institution.[8] However, counsel argues that despite these circumstances, "[t]hroughout his 15 years in prison, Sterling has never harmed anyone. That is because Sterling is not a violent person. The physical altercations Sterling was involved in were a product of his environment—the violent USP—and do not reflect Sterling's conduct outside of the prison walls." *Id.* at 4.

Sterling is now 35 years old. He has been incarcerated for these offenses for almost sixteen years. *See* ECF No. 5. While in BOP custody, Sterling has taken advantage of numerous educational and vocational opportunities in furtherance of his rehabilitation. *See* ECF No. 265-7.

---

[7] *See* https://www.bop.gov/policy/progstat/5100_008cn.pdf at pp. 33, 39 (age and length of sentence constitute factors that increase an inmate's security classification) (last visited Feb. 26, 2021).
[8] *See* ECF No. 265 at 3; *see also Federal Death Penalty Case to be Held in Lexington*, Sep. 30, 2014, available at https://apnews.com/article/e0ecbe01e5124b8896f3d793602e0b96; *Big Sandy Inmate Sentenced for Stabbing Officer with Feces-covered Weapon*, Jan. 7, 2010, available at https://www.kentucky.com/news/local/crime/article44019903.html .

His concentrated areas of study include Building Trades (104 hours), Soft Skills/Reading (200 hours), Industrial Sewing (120 hours), and Keyboarding (75 hours). Retroactivity Report at 7. Sterling appears to be a very bright student.[9] *See e.g.* ECF No. 252-1 at 7-14; ECF No. 265 at 2. Sterling maintains a close relationship with his family, several of whom attended the hearing on these motions. *See also* ECF No. 265-1 through -6. Sterling's family and family friends have offered their support with regard to housing, employment and emotional support once he is released. *Id.*

    **2.**    **Whether a reduction is consistent with applicable policy statements**

The Court previously found that the Sentencing Commission's relevant policy statement (U.S.S.G. § 1B1.13) does not constrain a court's discretion when considering compassionate release motions filed directly by defendants, rather than the Bureau of Prisons. *See* ECF No. 262 at 8-9. Nevertheless, as the Court previously stated, it will consider the policy statement to the extent it is relevant. *See* ECF No. 262 at 9 n.7. The only portion of § 1B1.13 that is relevant here is found at subsection (2), which requires courts to consider whether the defendant is "a danger to the safety of any other person or to the community . . . ."[10]

The Court finds no indication in the record that Sterling has been or will be a danger to others or to his community if released. While there is one act of violence in Sterling's history – the Mullins' incident – that act occurred when Sterling was a nineteen year old drug-addict and Sterling was not the aggressor in that incident. At 35 years old, Sterling has now spent almost half his life and nearly all of his adulthood in federal prison. As detailed above, he has made significant

---

[9] Sterling has excelled at numerous paralegal courses he has taken while in BOP custody. *See* ECF No. 252-1 at 7-14. He clearly has an aptitude for such work, as evidenced by the pro se briefs he has filed in connection with these motions. *See* ECF Nos. 249, 251-52, 257-1.

[10] Although § 1B1.13(1)(A) is also relevant (courts must find "extraordinary and compelling reasons warrant the reduction"), the Court has previously addressed that requirement. *See* ECF No. 262 at 11.

strides toward rehabilitation during his incarceration. Sterling will not simply be "turned loose" as a result of this Ruling. He will still have several years left to serve on his sentence, during which it is this Court's hope that he will continue to work towards rehabilitation to ensure his successful reentry back into society. Finally, Sterling will still be required to complete five years of supervised release, as imposed by the original Judgment, and additional conditions can be added to supervision if necessary. Supervision will further assist Sterling in his "transition to community life." *United States v. Johnson*, 529 U.S. 53, 59 (2000).

## II.
### MOTION FOR SENTENCE REDUCTION
### PURSUANT TO SECTION 404 OF THE FIRST STEP ACT

By this motion, Sterling seeks a reduction to his term of imprisonment imposed for his narcotics convictions. As set forth in the Court's prior Ruling, all parties agree that Sterling is eligible for relief on Count 3 (possession with intent to distribute cocaine base) pursuant to section 404 of the First Step Act.[11] *See* Retroactivity Report at 1. Sterling's original statutory range of imprisonment on Count 3 was ten years to life; it is now five to forty years. Sterling's original sentencing guideline range on this conviction was 168 to 210 months. In the Retroactivity Report, the Office of Probation determined Sterling's current guideline range is 77 to 96 months, based upon a total offense level of 24 and a criminal history category of IV. However, the Court finds Sterling's criminal history to be vastly overstated.

Sterling was determined to have a criminal history category of IV due to three prior criminal convictions, resulting in seven criminal history points. The first – Criminal Trespass and Criminal Mischief due to vandalism of a softball field – occurred when Sterling was thirteen years

---

[11] Sterling was charged with four counts relating to distribution of cocaine base (Counts 1, 3, 5 and 7). The four drug convictions were grouped together for purposes of determining the sentencing guideline range. Count 3 was the most serious of the drug charges.

old and resulted in two criminal history points. The second, Theft of Goods – *i.e.*, an 8 oz. bag of Star Burst Fruit Chews – occurred when Sterling was fourteen years old and resulted in two criminal history points. Sterling's last conviction was for Criminal Trespass and Resisting an Officer by providing a false identity and occurred when he was seventeen years old, thereby resulting in one criminal history point. Under the current Sentencing Guidelines Manual, Sterling would have five criminal history points, as the provision adding two points to his criminal history score set forth at paragraph 51 of the Presentence Investigation Report ("PSR") is no longer in effect.[12] [ECF No. 199 at 15]. Further, the Court finds the four points for Sterling's juvenile offenses substantially over-represent the seriousness of Sterling's criminal history. Absent these four criminal history points and the two points at paragraph 51, Sterling's Criminal History Category would be I. A total offense level of 24, coupled with a Criminal History Category I, results in a guideline range of imprisonment of 51 to 63 months. The Court finds a sentence of sixty (60) months for the narcotics offenses is sufficient, but not greater than necessary, to accomplish the goals of sentencing.

### III.
### EXTENT OF RELIEF GRANTED

For all of the reasons set forth above, as well as those set forth in the Court's prior Ruling [ECF No. 262], the Court will reduce Sterling's sentence as follows:

The term of imprisonment on Counts 1, 3, 5, and 7 will be reduced to sixty (60) months.

The terms of imprisonment on Counts 2, 4, 6 and 8 will be reduced to sixty (60) months.

The term of imprisonment on Count 9 remains sixty (60) months.

---

[12] Five criminal history points places Sterling in a Criminal History Category of III. A total offense level of 24, coupled with a Criminal History Category III, results in a guideline range of imprisonment of 63 to 78 months.

Counts 1, 3, 5, 7 and 9 are to run concurrently, and counts 2, 4, 6 and 8 are to run consecutively to each other and any other sentence. Accordingly, this results in a total term of imprisonment of three hundred (300) months (i.e. 25 years).

All other provisions of the Judgment imposed on December 14, 2006 [ECF No. 105] remain in effect.

The Court finds this sentence reflects the seriousness of the offense, promotes respect for the law, provides just punishment for the offense, affords adequate deterrence to criminal conduct, protects the public from further crimes of the defendant, and will provide Sterling with additional educational and vocational training to ensure that he is prepared to successfully reenter society. The Court further finds that requiring Sterling to finish out the remainder of his 95-year sentence would be to enforce a sentence that, by modern standards, is "greater than necessary" to accomplish the goals of sentencing. *See* 18 U.S.C. § 3553(a)(2). It would also sanction the very sort of "unwarranted sentencing disparities" that Congress tasked the courts to avoid. *Id.* at § 3553(a)(6).

An Amended Judgment will issue forthwith.

SIGNED this 5th day of March, 2021.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE