UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 2:05-CR-20061-01 |
| VERSUS | JUDGE JAMES D. CAIN, JR. |
| SANCTIONED/BARRED JUSTIN PAUL STERLING (01) | MAGISTRATE JUDGE KAY |

MEMORANDUM ORDER

Before the court is a Motion to Reduce Sentence [doc. 272] filed by defendant Justin Paul Sterling under the First Step Act of 2018. The government opposes the motion. Doc. 276.

I.
BACKGROUND

The lengthy procedural history of this matter is provided in several prior rulings. *E.g.*, doc. 262. The court will not touch upon the many motions for post-conviction relief but notes that Sterling was charged with drug and firearms offenses arising from the following:

> On three separate occasions within a two-month period, the police recovered handguns possessed by Sterling. On January 23, 2005, Keith Mullins approached Sterling and asked if he had any crack to sell. As Sterling broke off the requested quantity, Mullins punched him in the face and grabbed the drugs. During a struggle, Sterling drew an RG Model 14 .22 caliber revolver and shot Mullins in the hand and abdomen. Undeterred by his wounds and assisted by his wife, Mullins seized Sterling's gun, drugs, and money and escaped. Mullins reported the incident to the police and turned over the RG revolver.
> The next day, after being advised of his *Miranda* rights, Sterling gave a written statement to the police in which he described the robbery and

> shooting. Sterling further explained that he purchased the revolver for $20 from a drug addict named "Wild Bill," who drove an old white camper van with a brown stripe down the side. Sterling was not arrested.
>
> On March 1, a Calcasieu Parish Sheriff's Officer stopped Sterling as he walked along the road because he fit the description of a suspect reported to be engaged in narcotics trafficking. Sterling consented to a search, and the deputy discovered a Lorcin .380 caliber pistol in his pocket but found no drugs. Sterling was arrested, given a misdemeanor summons, and released.
>
> Detectives eventually traced the RG revolver Sterling used to shoot Mullins and learned that it had been stolen from its registered owner in a burglary. A warrant was issued to arrest Sterling for possession of the stolen revolver. The police served the warrant and arrested Sterling on the morning of March 10 at the trailer of Renata Guillory. As police moved Sterling from the couch where he was sleeping, they discovered he was lying atop a Bryco .380 caliber pistol. The serial number on the gun had been scratched off.
>
> In a videotaped interview, Sterling explained to the police that he purchased all three pistols from "Wild Bill" in exchange for crack cocaine. As in his previous statement, he explained that Wild Bill lived in Sulphur and drove a white camper with a brown stripe. When Wild Bill would drive around the neighborhood, Sterling would ask him about buying a pistol and immediately furnish the crack. Sterling could later retrieve the gun from under a trash can. Sterling provided a detailed description of Wild Bill and his vehicle.

*United States v. Sterling*, 555 F.3d 452, 454–55 (5th Cir. 2009). Sterling pleaded guilty to the counts involving the incident with Mullins but went to trial on the remaining charges and was convicted. Docs. 67, 69, 80. His total sentence ran to 99 years based on statutory mandatory minimums and was affirmed, though both the sentencing judge and the Fifth Circuit expressed displeasure at the length. Doc. 252, att. 1, p. 1; *Sterling*, 555 F.3d at 454.

In subsequent years Sterling's sentences on the drug charges were reduced due to retroactive changes to the Sentencing Guidelines, resulting in a total term of 95 years. The bigger change, however, came after the passage of the First Step Act in 2018. Pursuant to a Motion for Reduction of Sentence filed in 2020, his sentences on all counts were further reduced to sixty-month terms for a total term of 300 months, i.e., 25 years, by judgment

dated March 5, 2021. Docs. 262, 268. This ruling was based on the First Step Act's provisions (1) making retroactive earlier revisions designed to reduce disparities in sentences between crack and powder cocaine-based offenses and (2) eliminating the enhanced sentence for a "second or subsequent" firearm conviction under 18 U.S.C. § 924(c) where the subsequent counts were part of the same indictment and/or course of conduct. Doc. 262. Sterling then moved for reconsideration, seeking further reduction. Doc. 270. The court denied the motion. Doc. 271.

Sterling now moves for reconsideration based on a December 2022 memorandum issued by Attorney General Merrick Garland ("Garland memo") to prosecutors regarding mandatory minimums and charging and sentencing for crack cocaine offenses. Doc. 272; *see* doc. 276, att. 1. In relevant part, the Garland memo advises prosecutors not to charge a drug crime triggering a mandatory minimum if the case meets the following criteria:

- The defendant's relevant conduct does not involve: the use of violence, the direction to another to use violence, the credible threat of violence, the possession of a weapon, the trafficking of drugs to or with minors, or the death or serious bodily injury of any person;
- The defendant does not have a significant managerial role in the trafficking of significant quantities of drugs;
- The defendant does not have significant ties to a large-scale criminal organization or cartel, or to a violent gang; and
- The defendant does not have a significant history of criminal activity that involved the use or threat of violence, personal involvement on multiple occasions in the distribution of significant quantities of illegal drugs, or possession of illegal firearms.

Doc. 276, att. 1, pp. 1–2. If the prosecutor determines that some but not all of the criteria are met, he should "weigh the considerations set forth . . . to carefully determine, through the exercise of their discretion and in consultation with their supervisors, whether a Title

21 charge with a mandatory minimum sentence is appropriate." *Id.* at 2. The memo also cautions prosecutors to take steps to promote equivalent treatment of crack and powder cocaine offenses, namely by charging the pertinent statutory quantities that apply for powder cocaine offenses if a mandatory minimum charge on a crack cocaine offense is warranted, and by advocating for a sentence consistent with the guidelines for powder cocaine. *Id.* at 4–5. Finally, the memo contains the following caveat:

> The policies contained in this memorandum, and internal office procedures adopted pursuant thereto, are intended solely for the guidance of attorneys for the government. They are not intended to create a substantive or procedural right or benefit, enforceable at law, and may not be relied upon by a party to litigation with the United States. Justice Manual § 9-27.150 (updated February 2018); *see United States v. Caceres*, 440 U.S. 741.

*Id.* at p. 5, n. 4.

Sterling moves for reduction of his sentence based on the guidance in the Garland memo, arguing that it represents an "extraordinary and compelling" reason justifying compassionate release. The government opposes the motion, asserting that (1) the Garland memo does not provide any such basis, and even if it did (2) Sterling is already serving the lowest sentence he could possibly serve under Garland's guidance, and (3) the factors set forth under 18 U.S.C. § 3553(a) also counsel against further reduction. Doc. 276.

## II.
## LAW & APPLICATION

A sentence of imprisonment may only be modified by the district court in limited circumstances. *Dillon v. United States*, 560 U.S. 817, 825 (2010). The court may reduce a term of imprisonment for "extraordinary and compelling reasons" so long as they are "consistent with applicable policy statements issued by the Sentencing Commission." 18

U.S.C. § 3582(c)(1)(A). Following passage of the First Step Act in 2018, inmates may use this provision to directly petition the court for compassionate release.[1]

District courts are not bound by the Sentencing Commission's policy statements (which do not reference circumstances such as these) in deciding motions for compassionate release. *See United States v. Shkambi*, 993 F.3d 388 (5th Cir. 2021). The court may consider "whether nonretroactive changes to [a defendant's] § 924(c) convictions, either alone or in conjunction with any other applicable considerations, constitute extraordinary and compelling reasons for a reduction in sentence." *United States v. Cooper*, 996 F.3d 283, 289 (5th Cir. 2021). Accordingly, the court may find a disparity between the defendant's actual sentence and what it would be under current law to constitute extraordinary and compelling circumstances even if the changes have not been made retroactive. However, the Garland memo does not reflect a change to current law. Instead, it is an internal policy document for the Department of Justice.

Moreover, Sterling has already received the benefit of the mandatory minimum five-year § 841(b) sentences that are currently in place. There is also no basis to believe that the United States Attorney's Office would make a different charging decision, regarding the amount or number of counts. Sterling's offense conduct met multiple criteria set forth above thanks to the involvement of firearms and the serious bodily injury of another person.

---

[1] The court may only act, however, "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request . . . whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly, the inmate is required to exhaust his administrative remedies with the BOP before bringing such a request to the court. *United States v. Franco*, 973 F.3d 465, 467–69 (5th Cir. 2020). The available documentation in this case shows that Sterling has exhausted his administrative remedies.

Sterling's current sentence is not unduly harsh when compared to the offense conduct, in which he shot someone during a drug deal gone bad and was later found to have more illegally acquired guns in his possession. Based on the foregoing, the Garland memo does not provide an "extraordinary and compelling reason" to reduce Sterling's sentence any further. Accordingly, the court will not consider whether reduction is warranted under the factors set forth in 18 U.S.C. § 3553(a).

### III.
#### CONCLUSION

For the reasons stated above, the Motion to Reduce Sentence [doc. 272] is **DENIED**.

**THUS DONE AND SIGNED** in Chambers on the 4th day of April, 2023.

JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE